IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ONASSET INTELLIGENCE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-3709-N |
| | § | |
| 7PSOLUTIONS, LLC, | § | |
| | § | |
| Defendant. | § | |

## ORDER

This Order addresses two motions: (1) Defendant 7PSolutions, LLC's ("7PSolutions") motion to dismiss for lack of personal jurisdiction, to dismiss or transfer due to improper venue, and to dismiss certain claims for failure to state a claim [Doc. 11]; and (2) 7PSolutions' motion to transfer venue [23]. The Court (1) grants the former motion in part and denies it in part and (2) denies the latter motion. The Court declines to dismiss for lack of personal jurisdiction, to dismiss or transfer because of improper venue, or to transfer venue, but it dismisses certain of Plaintiff OnAsset Intelligence, Inc.'s ("OnAsset") claims. The Court grants OnAsset leave to amend.

## I. THE DISPUTE OVER ONASSET'S PATENTS

OnAsset provides asset tracking services. Based in Dallas, OnAsset manufactures wireless devices that monitor various modes of transit, including land, sea, and air. It claims to be a global leader in airborne asset tracking. 7PSolutions provides, among other things, transportation management services, including the tracking of data related to cargo

shipments.  It is based in Indiana.  In this lawsuit, OnAsset contends that it owns two patents related to asset tracking and that 7PSolutions is infringing those patents.  7PSolutions moves the Court to dismiss OnAsset's complaint or to transfer this case to Indiana.  The Court has allowed the parties sixty days in which to conduct jurisdictional discovery.

## II.  THE COURT HAS PERSONAL JURISDICTION OVER 7PSOLUTIONS

### A.  The Federal Circuit's Standard for Dismissal of Patent Cases Under Rule 12(b)(2)

In determining whether it may exercise personal jurisdiction over a nonresident defendant for patent claims, a district court applies Federal Circuit law.  *See Taylor v. Ishida Co., Ltd.*, No. 3:02-CV-0402-D, 2002 WL 1268028, at *2 (N.D. Tex. 2002) (citing *Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002)); *see also Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006).

When a nonresident defendant moves to dismiss a case for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident.  *See Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001).  The plaintiff's burden depends on the case's procedural posture.  If the parties have not conducted jurisdictional discovery, the plaintiff need make only a prima facie showing of jurisdiction, and the court resolves all factual disputes in the plaintiff's favor and accepts uncontroverted allegations in the complaint as true.  *See Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010) (citing *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1282 (Fed. Cir. 2005); *Deprenyl Animal Health, Inc. v. Univ.*

*of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002)). If the parties have conducted jurisdictional discovery, however, the plaintiff must establish jurisdiction by a preponderance of the evidence. *See Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1334 (Fed. Cir. 2001). Because the Court allowed jurisdictional discovery, the latter burden applies.

Personal jurisdiction over an out-of-state defendant involves two inquiries: (1) whether the forum state's long-arm statute permits service of process, and (2) whether the assertion of personal jurisdiction would violate federal due process. *See Nuance Commc'ns*, 626 F.3d at 1230. A nonresident defendant is subject to the personal jurisdiction of a federal court to the same extent the defendant would be amenable to the jurisdiction of a state court in the same forum. *See LSI Indus. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000) ("We defer to a state's highest court to interpret whether a defendant is amenable to process in the forum state."); *Taylor*, 2002 WL 1268028, at *2 ("The court first decides whether the defendant is amenable to process in the forum state."). This Court, therefore, must apply Texas law to ascertain if Texas may assert long-arm jurisdiction over Defendants. The Texas long-arm statute confers jurisdiction to the limits of the federal Constitution. *See Trinity Indus., Inc. v. Myers & Assocs., Ltd.*, 41 F.3d 229, 230 (5th Cir. 1995); *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408 (1984). The Court, therefore, need concern itself only with the federal due process inquiry. *See Taylor*, 2002 WL 1268028, at *2.

Due process requires the satisfaction of two elements for a court to exercise personal jurisdiction over a nonresident defendant: (1) the defendant must have some minimum

contacts with the forum that result from an affirmative act on its part such that the defendant could anticipate being haled into the forum state's courts, and (2) would comport with traditional notions of "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–77 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945). The Due Process Clause ensures that persons have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Id.* at 472 (citing *Shaffer v. Heitner*, 433 U.S. 186, 218, (1977) (Stevens, J., concurring)) (alteration in original). "Once the plaintiff has shown that there are sufficient minimum contacts to satisfy due process, it becomes defendants' burden to present a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Electronics For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1351–52 (Fed. Cir. 2003) (quoting *Burger King*, 471 U.S. at 477).

A court can exercise personal jurisdiction in three different ways in the Federal Circuit: specific jurisdiction, general jurisdiction, and personal jurisdiction under the stream-of-commerce theory.[1] Specific jurisdiction exists if (1) the cause of action is related to or arises out of the defendant's contacts with the forum, and (2) those contacts meet the due process standard. *See Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009) (citing *Burger King*, 471 U.S. at 472–73). In the Federal Circuit, specific jurisdiction entails a three-part test: (1) whether the defendant purposefully directed activities

---

[1]Because the Court has specific jurisdiction over 7PSolutions, it need not discuss general jurisdiction or the stream-of-commerce theory.

at the forum's residents, (2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair. *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1361 (Fed. Cir. 2012) (citing *Nuance Commc'ns*, 626 F.3d at 1231). "The first two factors correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001).

The Supreme Court has provided some guidelines regarding what constitutes minimum contacts and what does not. To establish minimum contacts, a nonresident defendant must do some act by which it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Random, fortuitous, or attenuated contacts do not suffice., and neither do the unilateral activities of others *Burger King*, 471 U.S. at 475. In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has considered whether a defendant's contacts with the forum make it reasonable to require the defendant to defend the particular suit in that forum. *Shaffer*, 433 U.S. at 203. "So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *Burger King*, 471 U.S. at 462 n.18 (1985).

### B. The Court Has Specific Jurisdiction

***1.  7PSolutions' Contacts with Texas.*** **–** The parties dispute whether the Court has jurisdiction, but there appears to be no dispute as to 7PSolutions' contacts with Texas. Several such contacts exist.  First, 7PSolutions' president, Jeffrey Clark interacted with Climate Controlled Solutions ("CCC"), a company in Port Arthur, Texas.  Clark contacted CCC on September 6, 2012 to see whether CCC would be interested in purchasing 7PSolutions' services, including the allegedly infringing products.  On September 12, CCC asked for more information.  7PSolutions and CCC continued to correspond, and Clark visited Texas twice in connection with the CCC negotiations.  7PSolutions has sold four devices to CCC for testing purposes.  It anticipates doing further business with CCC.

Second, 7PSolutions has sent letters of introduction to thirty-seven airlines, including two in Texas: American Airlines ("American"), headquartered in Fort Worth, and Southwest Airlines ("Southwest"), located in Dallas.  7PSolutions sent its letter to American on September 12, 2012 and its letter to Southwest on October 22.  The letters did not solicit business from American and Southwest; rather, they aimed to set the groundwork for 7PSolutions' and its customers' use of the airlines' services.  7PSolutions sought to have American and Southwest approve the use of certain allegedly infringing products on their planes.  Moreover, the letters expressed 7PSolutions' interest in sharing the data it collects with the airlines.  Clark admitted in his deposition that he knew at the time 7PSolutions sent the letters that Southwest and American were located in Texas.

     *2.  The Court May Consider the Contacts That Occurred After OnAsset Filed Suit.* **–** The parties disagree about whether the Court can consider the contacts that occurred after OnAsset filed its complaint in this case on September 12, 2012. The Court concludes that it may consider such contacts. In *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, the Federal Circuit determined that a declaration having to do with the defendant's potential post-complaint forum-state contacts was properly before the Court. 21 F.3d 1558, 1562–63 (Fed. Cir. 1994). It explained that "the two causes of action, direct infringement and inducing infringement, both involve the continuous infliction of injury upon the victim." *Id.* at 1563. Unlike in a case involving a discrete tortious act, "[i]n a case involving a continuous tort, it would be arbitrary to identify a single moment after which defendant's contacts with the forum necessarily become irrelevant to the issue of specific jurisdiction." *Id.* As in *Beverly Hills Fan*, the causes of action in this case – direct and indirect infringement – continuously inflict damage on the victim. The reasoning of *Beverly Hills Fan* thus applies to the facts before the Court. *Accord Am. Allsafe Co. v. Scot Young Research, Inc.*, No. 3:96-CV-0977P, 1997 WL 587483, at *3 (N.D. Tex. Sept. 15, 1997) ("Where, as here, however, plaintiff complains of continuing violations, the Court properly may consider contacts subsequent to those occurring prior to filing of suit.").

     7PSolutions' attempts to distinguish *Beverly Hills Fan* are unpersuasive. It argues that the case should apply only to cases involving the stream-of-commerce theory of jurisdiction. But, as explained above, the Federal Circuit was concerned in *Beverly Hills Fan* with the ongoing nature of the harm alleged in the case, not the type of jurisdiction at issue.

7PSolutions also points to a later Federal Circuit case distinguishing *Beverly Hills Fan* , but that later case is entirely inapposite.  *See AFTG-TG*, 689 F.3d at 1365.  In *AFTG-TG*, the Court found that it lacked jurisdiction because the defendant had fewer contacts than the defendant in *Beverly Hills Fan* .  *AFTG-TG* has nothing to do with whether a court may consider a defendant's post-complaint contacts with the forum state.

Based on the holding of *Beverly Hills Fan*, the Court will consider 7PSolutions' contacts occurring after OnAsset filed its complaint in this action.

***3. 7PSolutions' Contacts Are Sufficient to Subject It to Specific Jurisdiction.*** – The Court concludes that it has specific jurisdiction over 7PSolutions.  7PSolutions' actions pursuant to its relationship with CCC and its letters to American and Southwest are sufficient to subject 7PSolutions to this Court's jurisdiction.  Again, specific jurisdiction entails a three-part test: (1) whether the defendant purposefully directed activities at the forum's residents, (2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair.

First, there can be no question that 7PSolutions purposefully directed its activities toward Texas.  CCC is located in Port Arthur, and Clark flew to Texas twice to meet with CCC representatives.  Moreover, he admitted that he knew that Southwest and American are headquartered in Texas.[2]  *See Inamed*, 249 U.S. at 1362 (noting that defendant's phone calls

---

[2]7PSolutions also maintains a website, but the parties do not dispute that it is essentially "passive."  That is, a consumer cannot order a 7PSolutions product or service directly  from the website.  "A passive website is insufficient to establish purposeful availment for the purpose of due process."  *Marynard v. Phila. Cervical Collar Co.*, 18 F. App'x 814, 816 (Fed. Cir. 2001) (citing cases).

and letters from home state to forum state were purposefully directed at forum). These contacts are sufficient to support the exercise of specific jurisdiction so long as the other factors in the Federal Circuit's three-part test are met. *See Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1352 (Fed. Cir. 2002) (finding minimum contacts where defendant and forum-state resident exchanged phone calls and letters and where defendants' president traveled twice to forum); *Inamed*, 249 F.3d at 1364 (same where defendant negotiated four patent license agreements with forum-state resident via telephone or mail and traveled to forum only once for "get acquainted" session).

Second, OnAsset's claim relates to these activities. 7PSolutions sold allegedly infringing products to CCC and hopes to sell them more. It contacted American and Southwest with the ultimate goal of allowing allegedly infringing products to be used on those airlines' planes. OnAsset's infringement claims are related to these activities. They are obviously related to 7PSolutions's sales because the sold products allegedly infringe OnAsset's patents. And they are also related to the letters to Southwest and American, as the allegedly infringing products would lose much if not all of their utility if airlines did not agree to allow them on their planes. Because 7PSolutions purposefully directed its activities toward Texas, and because OnAsset's claims are related to those activities, 7PSolutions has sufficient minimum contacts with Texas to subject it to specific jurisdiction in the state.

Finally, personal jurisdiction in this case is reasonable and fair. Again, it is 7PSolutions's burden to present a compelling case that jurisdiction would be unreasonable. *See Electronics For Imaging*, 340 F.3d at 1351–52. In determining whether jurisdiction

offends due process, a court considers (1) the defendant's burden, (2) the forum state's interests, (3) the plaintiff's interest in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the states' shared interest in furthering fundamental social policies. *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 814 (5th Cir. 2006). 7PSolutions has presented no compelling case that jurisdiction is unreasonable. It presents no evidence that trial in Texas would unfairly burden it.[3] Texas has an interest in providing recovery for injuries inflicted within its borders and discouraging future such injuries. OnAsset has a strong interest in convenient and effective relief, which it can receive in Texas. The Court is already familiar with some aspects of the parties' dispute, so it would be more efficient to resolve the controversy here than elsewhere. Finally, Texas shares an interest with all states in providing a forum for the resolution of disputes involving its citizens. Personal jurisdiction therefore accords with traditional notions of fair play and substantial justice.

    ***4.   Conclusion as to Personal Jurisdiction.*** – Because this dispute relates to 7PSolutions' contacts with Texas, and because of the extent of these contacts, the Court has specific personal jurisdiction over 7PSolutions. As the Court has jurisdiction, it need not address whether it also has general jurisdiction or jurisdiction under a stream-of-commerce theory.

---

    [3]"[B]ecause 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." *Burger King*, 471 U.S. at 474 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

### III. Venue Is Proper in This District

Federal Rule of Civil Procedure 12(b)(3) provides that a court may dismiss an action when venue is improper. A court may transfer or dismiss a patent case based on improper venue under 28 U.S.C. § 1406(a). *See HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307 (Fed. Cir. 1999). "Venue in a patent action against a corporate defendant exists wherever there is personal jurisdiction." *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005). Federal law provides that a "corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d). This standard applies in patent cases. *See Delta Sys., Inc. v. Indak Mfg. Corp.*, 4 F. App'x 857, 859 (Fed. Cir. 2001); *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990).

The only contacts 7PSolutions has with the Northern District of Texas are its interactions with Southwest and American. The Court determines that these contacts would be sufficient to support personal jurisdiction in this District if the District were a state. Clark knew the airlines were based in Texas when he sent them letters seeking authorization to use the allegedly infringing products on the airlines' planes. OnAsset's claims are related to these letters because, without authorization to function on commercial airlines, the ability of the challenged airborne tracking devices to infringe on OnAsset's patents would be minimal. And, again, the Court is aware of no compelling reason that jurisdiction is unreasonable. The

Court concludes, therefore, that venue is proper in this District and declines to transfer the case under section 1406(a).

### IV. THE COURT DECLINES TO TRANSFER THE CASE

#### A. Standard of Review for Motions to Transfer Venue

7PSolutions also asks the Court to transfer this action to the Southern District of Indiana under 28 U.S.C. § 1404(a). A district court applies the law of the circuit in which it is located when determining whether transfer of a patent case is appropriate under section 1404(a). *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (applying Fifth Circuit standard). A district court has the authority to transfer a civil case to another district under this section where the action could have been brought originally if the transfer would be "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). The movant bears the burden of demonstrating good cause why the proposed venue is superior to the original venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 & n.10 (5th Cir. 2008) (en banc) (citing *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963)). Accordingly, a court may transfer to the proposed venue only when that venue is "clearly more convenient than the venue chosen by the plaintiff." *Id*. at 315.

To determine whether a movant has shown good cause, courts in this Circuit look to a number of private and public factors. The private interest factors are (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other

practical problems that make trial of a case easy, expeditious and inexpensive. *Id.* The public interest factors are (1) the administrative difficulties flowing from court congestion, (2) the local interest in having localized interests decided at home, (3) the familiarity of the forum with the law that will govern the case, and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are not exclusive, and no one is dispositive. *Id.* (quoting *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)).

### B.  7PSolutions Has Not Carried Its Burden Under Volkswagen

**1.  *OnAsset Could Have Filed in Indiana.*** – A patent infringement action " may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). 7PSolutions resides in Brownsburg, in the Southern District of Indiana. OnAsset therefore could have brought this suit in that district.

**2.  *Private Interest Factors.*** – 7PSolutions has not demonstrated that the private interest factors support transferring this case. One of the factors supports denying 7PSolutions' motion, and the other three are neutral.

*a. Access to Sources of Proof.* – OnAsset has submitted evidence that "thousands of pages of documents" relevant to this case exist at its Texas headquarters. 7PSolutions has introduced no such evidence. 7PSolutions argues that the Court should transfer the case because the dispute's "center of gravity" is in Indiana. But 7PSolutions points only to case

law that predates, and does not apply, the analytical framework enunciated in *Volkswagen*. 7PSolutions has not shown that the location of a dispute's "center of gravity" is necessarily the location where access to sources of proof is easiest.  Moreover, 7PSolutions has produced no evidence indicating how many relevant documents or other sources of proof are in Indiana.  This factor weighs against transfer.

      *b. Availability of Compulsory Process.* – 7PSolutions has provided the Court with the identities of a number of potential witnesses.  Some would benefit from a transfer, some would benefit from a trial in Texas, and some would not be noticeably affected.  The Court cannot draw a conclusion from this data.  Moreover, "courts in this district have previously considered this factor neutral where, as here, neither party has alleged that nonparty witnesses would be unwilling to testify."  *Cooper-McClintock v. United States*, No. 3:11-CV-1412-B, 2011 WL 5182259, at *3 (N.D. Tex. Oct. 31, 2011) (citing cases).  This factor, then, is neutral.

      *c. Cost of Attendance.* – 7PSolutions argues, in essence, that a trial in Texas would be a hardship for it and its employees; OnAsset responds that trial in Indiana would burden it and its employees.  The parties have not pointed to evidence relating to non-party witnesses.  "[T]he court may not transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other."  *TGI Friday's Inc. v. Great Nw. Restaurants, Inc.*, 652 F. Supp. 2d 750, 761 (N.D. Tex. 2009).  This factor is also neutral.

      *d. Other Practical Problems.* – OnAsset suggests that the case should stay in this District because another case involving the same patents is pending here, and consolidation

ORDER – PAGE 14

would serve the goal of judicial economy. But that case is closed and was, in any event, pending before a different judge than is this action. The factor is also neutral, too.

**3. *Public Interest Factors.* –** These factors also point to denying 7PSolutions' motion to transfer: again, one favors retaining the case, and three are neutral.

*a. Court Congestion.* – 7PSolutions points to statistics indicating that the average caseload per judge in the Southern District of Indiana is 546, compared with an average caseload in this District of 628. However, the time from filing to trial in Indiana is 28.9 months, whereas it is only 19.9 months here. Moreover, 5.6% of the cases in the proposed transferee district are three years old or older, but only 1.3% are that old in this District. The Court concludes that these statistics favor retaining the case. Though judges in this district preside over more cases on average, the docket in the proposed transferee district appears to be more congested.

*b. Local Interest.* – Both Texas and Indiana have interests in this cases – Texas because one of its resident corporations has alleged that its patents have been infringed, and Indiana because one of its resident corporations has been accused of that infringement. This factor is therefore neutral.

*c. Familiarity with the Law and Problems with Conflicts of Laws.* – This is a patent infringement case under federal law. There is no reason to think that any federal court would have any more familiarity than another with the governing law. Moreover, the Court is unaware of any potential conflict-of-laws issues. Both of these factors are neutral, too.

*4. Conclusion as to* **Volkswagen** *Factors.* – 7PSolutions has not carried its burden of demonstrating that litigating this case Indiana would clearly be more convenient for all involved than litigating it here. Of the eight *Volkswagen* factors, two weigh in favor of retaining the action, and six are neutral. The Court therefore denies 7PSolutions' motion to transfer venue.

## V. THE COURT DISMISSES ONASSET'S CLAIMS FOR INDIRECT AND WILLFUL INFRINGEMENT

### A. Standard of Review for Rule 12(b)(6) Motions to Dismiss

When faced with a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right

to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (internal citations omitted).

### B.  Standards for Pleading in Patent Cases

OnAsset contends that 7PSolutions is infringing its patents both directly and indirectly and that 7PSolutions' infringement is willful.  Even in light of *Twombly* and *Iqbal*, a plaintiff can plead direct infringement merely by meeting the requirements set out in Form 18 of the Appendix of Forms to the Federal Rules of Civil Procedure.  *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1334 (Fed. Cir. 2012). Indirect infringement claims, however, must meet *Twombly* and *Iqbal*'s plausibility pleading standard.  *Id.* at 1336–37.

There are two types of indirect infringement: induced and contributory.  *Id.* at 1333. OnAsset accuses 7PSolutions of the former.  Federal law provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271.  "Liability under § 271(b) 'requires knowledge that the induced acts constitute patent infringement.'" *In re Bill of Lading*, 681 F.3d at 1339 (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011)).

OnAsset also asserts that 7PSolutions willfully infringed OnAsset's patents.  A finding of willful infringement may support an award of treble damages.  *See Dowling v. United States*, 473 U.S. 207, 227 n.19 (1985); *In re Seagate Tech., LLC*, 497 F.3d 1360, 1381 (Fed. Cir. 2007) (en banc).  To establish willful infringement, "a patentee must show by clear

ORDER – PAGE 17

and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate*, 497 F.3d at 1371.

### C. OnAsset Has Failed to State a Claim for Indirect or Willful Infringement

7PSolutions argues that OnAsset has not stated a claim for indirect or willful infringement upon which relief can be granted. OnAsset has not responded, other than to ask for leave to amend its complaint. The Court finds that the complaint does not sufficiently state the contested claims.

First, as to indirect infringement, the complaint asserts that 7PSolutions "has induced and induces its customers and end users to infringe" the two patents at issue. Compl. ¶¶ 8, 15. OnAsset has pled no facts to support these conclusions. The Court concludes, therefore, that OnAsset has not stated a plausible claim of indirect infringement.

Second, OnAsset's assertions of willful infringement are limited to conclusory statements that, on information and belief, 7PSolutions was aware of the patents in question. OnAsset has provided no further facts in support of its claim. Accordingly, the Court concludes that it has not stated a plausible claim for willful infringement.

### VI. THE COURT GRANTS ONASSET LEAVE TO AMEND

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Rule 15(a) "evinces a bias in favor of granting leave to amend." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765,

770 (5th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir.

1981)).  "Leave to amend, however, is by no means automatic."  *Little v. Liquid Air Corp.*,

952 F.2d 841, 845–46 (5th Cir. 1992), *rev'd on other grounds*, 37 F.3d 1069 (5th Cir. 1994).

A court should consider factors like "undue delay, bad faith or dilatory motive on the part

of the movant, repeated failure to cure deficiencies by amendments previously allowed,

undue prejudice to the opposing party by virtue of allowance of the amendment, futility of

amendment, etc."  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *U.S. ex rel. Steury v. Cardinal

Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010).

    This is OnAsset's first request for leave to amend its complaint.  7PSolutions opposes

OnAsset's request, but it points to no evidence of undue delay, bad faith, dilatory motive,

undue prejudice, futility, or any other relevant factor.  Given Rule 15's bias in favor of

amendment, the Court grants OnAsset leave to amend.

### CONCLUSION

    The Court denies 7PSolutions' motion to dismiss for lack of personal jurisdiction, its

motion to transfer or dismiss for improper venue, and its motion to transfer venue under

section 1404(a).  The Court, however, dismisses OnAsset's claims for indirect and willful

infringement.  The Court grants OnAsset leave to filed an amended complaint within twenty-

one (21) days of the date of this Order.

    Signed August 21, 2013.


                                               David C. Godbey
                                         United States District Judge